MINNESOTA LAND & INVESTMENT COMPANY *vs.* CHARLES A. DAVIS.

May 13, 1889.

**Congressional Land Grant—Effect of Certificate to State.**—The certificate of the secretary of the interior provided by section 3 of the act of congress of July 13, 1866, entitled "An act relating to lands granted to the state of Minnesota, to aid in constructing railroads," certifying to the state the lands granted to it by the congressional land-grant act of March 3, 1857, and by the act of congress of March 3, 1865, entitled "An act extending the time for the completion of certain land-grant railroads in the states of Minnesota and Iowa, and for other purposes," has the force and effect of a patent, and its effect in passing the title to particular lands cannot be questioned by one not interested.

Appeal by plaintiff from an order of the district court for Brown county, *Webber*, J., presiding, overruling its demurrer to the second defence pleaded in the answer.

*Gordon E. Cole* and *Daniel Rohrer,* for appellant.

*Lind & Hagberg, J. M. Thompson,* and *G. W. Somerville,* for respondent.

GILFILLAN, C. J.    This is an action in ejectment.    The plaintiff demurred to one of the defences set forth in the answer, and from an order overruling the demurrer the appeal is taken.    The part of the answer demurred to assumes to set forth the facts through which the title claimed by plaintiff was derived from the United States, and the defendant claims that such facts show that no title passed to the railroad company, under which plaintiff claims title.    The answer alleges that the land in question is within the ten-mile limit of the grant by congress to aid in the construction of that line of railroad now known as the Winona & St. Peter Railroad, as the grant by act of March 3, 1857, (11 U. S. St. at Large, 195,) of six sections per mile was increased to ten sections per mile by the act of congress of March 3, 1865, (13 U. S. St. at Large, 526,) entitled "An act extending the time for the completion of certain land-grant railroads in the states of Minnesota and Iowa, and for other purposes;" that the line of said railroad was not definitely fixed till August 30, 1864; that prior to said date, and on May 24, 1864, the land in question was part of the unappropriated public domain, and subject, under the act of congress of May 20, 1862, (U. S. Rev. St. §§ 2289 *et seq.,*) entitled "An act to secure homesteads to actual settlers on the public domain," to entry as a homestead in the proper land-office; that on said May 24, 1864, one Thomas Thompson duly entered said land as a homestead under said act, and continued to hold it under said entry until June 18, 1869, when the commissioner of the general land-office cancelled the entry; that on June 26, 1870, one Henry Gilbert made entry upon said land under the pre-emption laws of the United States, made improvements thereon, and resided thereon until July 1, 1882, having, on September 23, 1871, filed his declaratory pre-emption statement; that July 1, 1882, the defendant purchased Gilbert's improvements, and took possession of the land with intent to pre-empt the same, and immediately after he applied at the proper land-office to file upon and enter the same as a pre-emption claim, but his application was refused on the ground that the land

had been certified to the state as follows: That the commissioner of the general land-office, on February 28, 1872, inadvertently and by mistake caused said land to be certified to the state for the benefit of the Winona & St. Peter Railroad Company, and the said certification or conveyance to the state has not since been cancelled.

The defendant urges that, because at the time of, and prior to, the definite location of the line of said railroad, the homestead right of Thomas Thompson had attached, the land was excepted from the operation of the congressional grant, and the act of certifying it as appertaining to the grant was absolutely void. As the defendant has no interest in the land, the facts pleaded are of no avail to him, unless they show that the certificate to the state is, as to this land, not merely voidable at the instance of the United States, but wholly void, and this the defendant concedes. The view that we take of the question whether, if the land ought not to have been included in the list, it renders the certificate void or only voidable at the election and instance of the government, makes it unnecessary for us to consider whether, under the granting act, a homestead right stood upon the same footing with a pre-emption right.

The congressional land-grant act of 1857 did not provide, so far as concerned the lands lying "in place," for any further evidence from the United States that particular tracts passed by the grant. The act of March 3, 1865, provided (section 6) that the secretary of the interior should issue to the state patents for all the lands granted. The act of July 13, 1866, (14 U. S. St. at Large 97,) entitled "An act relating to lands granted to the state of Minnesota to aid in constructing railroads," provided (section 3) that the lands should from time to time be certified to the state by the secretary of the interior. We assume that the certificate referred to in the answer was such as the act of 1866 provides for, to wit, a certificate by the secretary of the interior, and especially as on the argument here the appellant assumed it to be so, and the respondent did not question it. As the land in controversy was in place, it passed *prima facie* under the grant, upon the definite fixing of the line of the railroad. If nothing further had been done to designate this particular piece as passing, it would have been necessary for any one claiming that it did not, to

prove the special circumstances which, under the terms of the grant, excepted this piece from its operation. At all times the title was in the United States or the state. At the time of the certificate no one but the United States or the state had any interest in the land. No one but the United States could complain because it was included in the certificate. This being so, and the certificate having the force and effect of a patent, how can the respondent, who had no interest to be affected, claim that the piece ought not to have been included? The statute providing that the secretary should certify the lands to the state gave him the power, and made it his duty, to ascertain and determine, in the first instance at any rate, through the action of the land-office, which has charge and administration of the public lands, whether particular pieces of land passed by the grant, and whether any of the circumstances excepting particular lands from the general granting clause, existed. We conceive this to have been the purpose of the act requiring the lands to be certified, and so that the state and those deriving titles through it might have definite and certain evidence of their title. The United States might, in an appropriate action, avoid the effect of the certificate as to any lands certified through error of fact or law on the part of the certifying officer. But if the government chooses to acquiesce in the act of its officer, no one not interested in the land can complain. *McKinney* v. *Bode*, 33 Minn. 450, (23 N. W. Rep. 851.)

Order reversed.